Good morning, your honors. May it please the court. There's no dispute that Landry's fleet freely entered into a contract unambiguously providing that Landry's would submit any contract dispute to a London arbitral forum subject to enforcement of that arbitration agreement by English courts under English law. The sole legal basis on which Landry's sought and seeks to enjoin the London proceedings to enforce its own agreement is that Louisiana law bars its enforcement. But this court has held multiple times that the New York Convention quote nullifies that Louisiana law in the context of an international arbitration agreement like this one. And they participated in the English proceedings for eight months or so. Absolutely, that's correct. That's absolutely right. And under those precedents, even leaving aside that factor, your honor, that's a critical fact, but even before we get to it, under the precedents of this court, Landry's claim to enjoin enforcement of its international arbitration agreement based on the non-existent Louisiana anti-arbitration law is, with respect, a frivolous claim. It is true, your honors, that the district court issued a preliminary injunction without reaching the merits of that claim because of supposedly difficult jurisdictional issues the court had not yet addressed. But as a unanimous Supreme Court held in Munaf versus Jarin, quote, a difficult question as to jurisdiction is, of course, no reason to grant a preliminary injunction. So this appeal, your honor, starts from the premise that the preliminary injunction here is indefensible on its own terms. This court should say so and follow the same course the Supreme Court followed in Munaf, where that court first addressed the unresolved subject matter jurisdiction question and found jurisdiction, and then addressed the preliminary injunction claim on its merits and rejected it. Personal injunctions, I mean, sorry, personal should have been taken a look at. I'm sorry, personal jurisdiction? That the personal jurisdiction as well as the subject matter jurisdiction, that both of those should have been taken a look at. So I don't think it had to have been taken a look at. Personal jurisdiction, a court can't issue an order under Hines. A district court cannot issue an order compelling arbitration without first determining that there's personal jurisdiction. But that's sort of technically not what was at issue here. Now, the first thing the court... Personal jurisdiction isn't at issue here? No, no, no. The antecedent question of what the type of order is. The first question is whether it had any power to issue a preliminary injunction at all. And if it doesn't have that power, if the claim is meritless, you don't have to address personal jurisdiction to just say, I can't issue a... Wait a minute. I thought that jurisdiction is what you first have to look at. And so I'm not understanding why we wouldn't have to look at that. And if there is none, or if it's something that has to be decided first, why wouldn't we address that first? You definitely have to look at subject matter jurisdiction. I understand that when you're the district court. But under Munaf v. Jarin and the cases it cites, the Denver case, when you've got a personal jurisdiction issue and they... And the merits are just... The claim is just meritless on its face. You don't have to decide that you have personal jurisdiction over the defendant first to say, you, plaintiff, have no basis for being in this court. That's a situation where you cannot reach personal jurisdiction. Having found preliminary injunction, why isn't that... And then you're the one... Aren't you the one up here as the appellant? Right. And so you don't think we need to look at personal jurisdiction? I'm shocked by that. What I guess, to be precise, we absolutely agree that it was an error. I agree with Your Honor that it was an error to issue an injunction against us, against our person, in joining us from doing something, right, without reaching preliminary injunction. So that much is absolutely true, and I want to retract anything I said suggesting otherwise. The question for this court, though, is does this court have to reach preliminary... Excuse me, personal jurisdiction in order to say that the preliminary injunction below was wrong as a matter of law, either or both because the court lacked subject matter jurisdiction or because the claim is meritless. That's the point. You're absolutely right the district court had to reach it. This court doesn't. That's all I'm saying. But if the court wants to reach it, the court can reach it. What do you do with the Enterprise International case that was cited by the appellees and you didn't mention it in your reply brief? With apology, you'll have to tell me what the premise of the, what the proposition that's being... It shouldn't be a preliminary injunction without considering personal jurisdiction, Fifth Circuit, 1985. So that's, right, I agree with that, and I want to clarify my exchange with Judge Haynes. A district court cannot issue a preliminary injunction unless it has personal jurisdiction. That is absolutely right. We can stipulate to that, and the court below didn't find preliminary personal jurisdiction. Do you think they have personal jurisdiction? No. Okay. But there's three errors, this is my point. There's three errors, at least three errors in the district court's exercise of judicial power. As a matter of appellate jurisdiction, this court could say that among, you know, the error, the reason this court is reversing is that there's no personal jurisdiction, right? That's one way the court could do it, but it doesn't have to say that. That's my only point. The court could also say the court erred in exercising judicial power because the court, there was no merit, right, to the injunction in the first place. The claim is meritless, and so it didn't have any power to do that, right? That's another reason the court can reverse an injunction. It doesn't have to address the personal, and another reason is the fact that the international comedy would preclude the injunction. You can leave to the side the question whether there's personal jurisdiction and just tell the district court that the injunction is, you know, invalid. The plaintiff has no claim to it as a matter of law, which is what the court did in Munaf. If you think personal jurisdiction matters, then do you think we should decide it or we should remand it to the district court to consider? So we definitely think you should not remand it for, you know, a variety of reasons, and the court definitely has the power as a matter of appellate jurisdiction to reach all issues, jurisdictional and merits issues that, as the court just said, the en banc court just said in days, on appeal from a preliminary injunction, issues relating to whether there is a proper suit at all can be decided. So this court has the power to reach those, and it definitely should under these circumstances because of the exigency. Time is of the essence here, given the January 26 proceeding that is scheduled in London, and as the en banc court said per Judge Smith in Green Valley, this court will address a purely legal issue when first the proper resolution is beyond any doubt, as all of the issues here are. None of them is seriously contested, but none of them is legitimately contested. And second, where an injustice would otherwise result, which clearly could well happen here if the court doesn't resolve these issues itself and remands, whether or not they include personal jurisdiction, any of the unresolved issues, if it remands for the district court to resolve them, there's a serious threat of injustice, almost automatic, because it's going to disrupt and continue to delay and obstruct the international proceeding that is already scheduled. So I don't think there's any question that this court both has the power and should exercise the power as contemplated in Green Valley, for at least two related reasons. One is there's a general principle, right, that under Chapter 2 of the New York Convention, excuse me, Chapter 2 of the FAA, which embodies the New York Convention, courts have an obligation to enforce arbitration agreements promptly. As the U.S. Supreme Court said in EPIC in the context of domestic arbitration, arbitration agreements are not subject to delay and obstruction by the courts. And what the court said in Mitsubishi Motors, of course, is that principle, quote, applies with special force in the field of international commerce. So we're operating against a backdrop of a particular, like sort of an automatic exigency in a case like this. Then you look to the actual facts of this case and you've got a very specific exigency, which is that we have this hearing scheduled for January 26th. And the parties, not just Chubb-Bermuda, but the parties need a prompt resolution in order to facilitate the proceeding that Landry's agreed to. Remember that, and Judge Smith, your point is so correct that they committed and agreed and litigated for eight months. But there's even a more important antecedent point, which is that agreement was pursuant to an years ago in entering into the policy where they said their words in black and white writing in the contract that they would commit any dispute, coverage dispute, under the contract to an arbitral forum in London, which under this court's precedent means they agreed to have London courts enforce that arbitration agreement. That's their agreement. That's the party's agreement. And so that's the specific prejudice here is that we've already begun that proceeding, that process, they've participated in it, and it needs to continue. Leaving the merits open, Your Honor, would create this extraordinary uncertainty if this court, certainly if the court were to leave the, well, it would be sort of a greater problem if the court reversed the injunction, but then left open some of these jurisdictional issues. Because the one thing we can, I think, agree on is that a court cannot issue an injunction simply because of the prospect of difficult jurisdictional issues, right? That's not a basis. The Supreme Court said so in Munaf. So, but if this court were to reverse the injunction and say, you can't do that, so there's no injunction anymore, which means the London proceedings can proceed as scheduled, but we're leaving to the district court the resolution of these unresolved issues, that creates this intolerable problem, this uncertainty where the London proceedings will continue according to the schedule. There'll be some period of delay. I don't mean bad faith delay, but some period where the district court is going through its process to reach its resolution of those issues. It's already said it's going to require additional briefing and argument. It hasn't demonstrated, you saw from the transcript, it hasn't demonstrated any particular interest in expediting the process. So what you'll have is the London proceedings going forward, and then someday in the sort of unknown future, the district court could resolve those issues and then impose an injunction, again, pulling the rug out a second time from the London proceeding, absolutely exacerbating and compounding the already serious affront to comedy that this proceeding currently has already exhibited. So we strongly submit that the last thing this court should do, I mean there's a lot of things the court should not do, but among them is to leave open issues for the district court to resolve on remand, given the exigencies here, the issues are all questions of law, they're extremely easily answered, and there's the backdrop of those exigencies. I just want to address what I think the simplicities of the issues are very briefly. The first one is the subject matter jurisdiction question, and it's actually not contested. Landry's doesn't argue in their briefs on appeal, and I don't think argued below, that basic subject matter jurisdiction here exists because of section 203 of the Federal Arbitration Act, which establishes federal question jurisdiction over whenever the case relates to an arbitration agreement that's subject to the convention, and the dispute relates to that arbitration agreement. That's satisfied. There's subject matter jurisdiction, there's really little more that needs to be said about it. Their only objection to the federal court hearing the case isn't even really a subject matter jurisdiction argument, it's an argument that the case was not properly removed under section 205 of the FAA, which is not about subject matter jurisdiction, but removal, and those arguments we've addressed in the brief, you know, have no merit whatsoever. They're presented here, so I think the court can and should say there's subject matter jurisdiction over this properly removed case, and that leaves only the merits of the issue, and again, as the court said in Green Valley, it can and should reach those merits, and they're so easy to resolve because their only argument for trying to escape their own arbitration agreement is that arbitration agreement is unenforceable under Louisiana law, and this court has said, as your honors are well aware, time and again, that the Louisiana law essentially doesn't exist in the context of an international arbitration agreement because the New York Convention nullifies it. That was the word in McDonnell, but you go back to Safety National, the en banc decision, and most recently the decision of this court in Bufkin makes clear that there's simply no basis for invoking the Louisiana anti-arbitration law to avoid enforcement of an international arbitration agreement. This court can and should say so, it should remand with directions to the district court to stay the proceedings pending the disposition of the London proceedings. Thank you, your honors. All right, thank you, Mr. Hacker. You've saved time for rebuttal. Good morning, your honors. Christopher P. I. U. from Ploche Smith and Neasett in Lake Charles. It's an honor to be before you. I want to start, your honors, with where Judge Haynes began, and that's with the question about personal jurisdiction, which seemed to trip up, my good friend. And the reason is, is because it's manifest that when there are jurisdictional issues and important jurisdictional issues that are not yet determined, it is always, always in the best interest of this court, and it's this court's direction that those jurisdictional issues should be handled. But we're not required to have to send it back. We can decide it. That, that is correct, your honor. I only, I only mentioned it to point out that there are existing motions to dismiss based on lack of subject matter jurisdiction. An opposition is briefed, contrary to the representation that personal jurisdiction is not had. That brief has Louisiana Revised Statute 22-442, which says an unauthorized insurer shall be sued in any cause of action arising in this state under any contract issued by it as a surplus lines contract. The district court of the parish in which the cause of action arose is. Nobody disputes that that's what the revised statute says. Correct. The ordinary course of things, but this hardly seems to be the ordinary course of things. It, what's your argument that that revised statute provision, which would apply in millions of situations, as you well know, but how does that eclipse sort of the 800-pound gorilla that we've got a pending matter in the UK and an arbitration agreement and so on and so forth? Surely you're not arguing that the revised statute speaks to those situations. Your honor, taking direction from you in the Halliburton case, the courts should decide arbitrability. In this particular case, the arbitration agreement in the contract does not, unlike the AAA contracts in paragraph 7A, which specifically give jurisdiction over arbitration to the arbitrator, that is not included in this arbitration provision. So under the guidance your honor gave in the Halliburton case, the courts are the ones of first instance to determine arbitrability. The 800-pound gorilla in the room is their implication that the only way that we are in London is because we say that there's reverse preemption under 22-868. That is not the case. They take one sentence on page 25 of our brief out of context by not quoting the beginning of the sentence which says the district court determined, and they use that to say that's our only point to get the convention nullified. That is not the case. We have a pending motion for remand, your honors, and in that motion for remand, we say that the arbitration provision specifically allows either party, and I'm quoting, to initiate arbitration 20 days after a claim is lodged. Not a suit is filed. A claim is lodged. A claim was lodged in this case in July of 2020. They acknowledge that in their papers. 14 of the 15 insurance companies in the tower that covered the Landry's company were brought into litigation. They were also brought into litigation as per page 13 of their brief footnote 2 in an Arlene's Parish lawsuit that was later non-suited. I was not involved. I don't know the reason, but the idea that they didn't know a claim was lodged or a suit was filed is ridiculous. So all we're saying is under the precedent of this court and even in the precedent that they cited in opposition, a four and a half year delay for the invocation of arbitration is certainly a question that Judge Kane can look at to see if they did not accept the right to arbitrate. Nobody here. That question of law is adequately before the district court and these other issues are also adequately before the district court and we're briefed there. They are certainly ripe for us to decide as questions of law, particularly given the timing. Your Honor, on the timing, I think the one linchpin item that's been left out is we filed first. So the A. S. I. Is the anti suit injunction in London. We're just asking that that be halted momentarily and joined temporarily until we can determine whether we're properly in London. The idea that we did things pursuant to well, I think I think so, Judge, but it's it's only partially briefed. We briefed They had an opposition brief due on October the third. No opposition was filed to our remand motion. The court considered it, as my opponent pointed out, a complex issue and determination that would require briefing and argument in our view. I completely understand the massive power this court has, and I know that I'm not going to tell you you can't do anything. You certainly can. But I think that what we've said forever and ever coming from this court is it is best practice for the district courts to decide and determine jurisdictional issues before your honors have to raise it. The idea that they went off ex parte and did something in London when we believe the convention doesn't apply to this case cannot create an exigent circumstance that now requires us to leapfrog over jurisdictional issues. That can't be the way it works. There's nothing exigent about an ex parte proceeding where we consented, and I'm using air quotes because we were told that if we didn't do something within 72 hours that we were going to be jailed, fined, imprisoned. And not only us, but anybody associated with our organization. And we entered an appearance always making jurisdictional objections, which as your honors know in the Fifth Circuit also does not impute jurisdiction in the Fifth Circuit. You're perfectly entitled to fight for your rights in a court while asserting jurisdictional exceptions. And eight months is just a blip. We filed first here. They interrupted it by a foreign anti-suit injunction. It's only Judge Kane's decision that that should be enjoined temporarily while he determines the jurisdictional issues. And I think that's an appropriate measure. Their argument, your honor, that there's no merit always goes back to this court's opinion in Safety National saying that Louisiana's anti-arbitration provision doesn't reverse preempt the McCarran Act. As your honor Judge Smith pointed out in the dissent in that case at page 737, it's kind of in dispute because when is an act of Congress not an act of Congress? That's what the dissent pointed out. I'm fully aware that the Second Circuit disagrees and says it another way. I'm not here today to argue that that should be somehow reversed and the Second Circuit should trump the Fifth. I'm not saying that at all. That is not the issue today. What I'm saying is the convention that sends this case to arbitration does not apply when they have waived their rights by delay under the policy. You can see that in several cases cited on their side and our side that the delay can waive that contractual right. In Kowalski, your honor, Kowalski Heavy Industries versus Bombardier Recreational, cited at page 5 of our brief, a party must do all that it reasonably can be expected to do to determine as early as possible whether to proceed through arbitration or the courts. We found in St. Mary's that a defendant's 10-month delay between the plaintiff's filing of a claim and the defendant's motion to stay for arbitration was inconsistent with the intent to arbitrate. What, in your view, are the facts here regarding the delay? That's the main thrust of the remand. Convention, your honor, as I pointed out, is not in any way automatic. So the facts of the delay are, Chubb knew in 2020 that a claim had been lodged. Chubb had that claim adjusted by Sedgwick, a Houston company in the U.S., wherein the claim was denied. The claim was again denied in October of 2020, showing a course of conduct as it related to this claim. But y'all didn't sue Chubb until years later. Correct. So it's, to me, a little weird that you're responding as a defendant when you're not a defendant. It's why I pointed out in the beginning, your honor, that the arbitration provision really is triggered by a claim and not a suit, and it's either party. And I know that's a nuance. If they thought you didn't want to bother them, why should they bother you? They, as a matter of strategy, and with their affiliated company, Chase Ace American, in the lawsuit, as a matter of strategy, wanted to coattail what was going on in the U.S. because nobody was winning COVID business interruption cases in the U.S. And for no cost, they could sit back and take a free ride on what was going on in Louisiana for four and a half years. Only when that didn't turn out the way they thought it was going to, did they try to then go to London for arbitration after we brought them in. So once you sued them, they went almost immediately. That is correct, but they said that they did it without having notice of our claim. That's not the case. They had notice of our claim on January 17th, and they went to arbitration in London on January the 30th, 2025. If they had acknowledged that we filed a suit and the suit was here, they're claiming they don't need service to remove from a state district court in this circumstance under the convention. So as they did with our TRO, right, they removed it to the federal court. They should have removed in the first instance our amended pleading to the federal court so that this court and the district court below could make the determination on arbitrability. They're trying to leapfrog your obligation, your right, your jurisdiction to determine arbitrability. That's all we want. I'm not here to say it is or isn't arbitrable. I'm not arguing the merits of that. That's why we were very specific to confine our argument to the very narrow and tailored preliminary injunction that says, hey, let me look at it. Let me, the district judge, look at these jurisdictional issues. I will do so post haste, but it shouldn't go off to London in a foreign court when a U.S. citizen has first filed a claim in the U.S. It should not go to London first. In every single ASI case that they cite where the ASI was vacated, there's not an American first filed party. In the four that this court has affirmed, CAPA, K-E-P-A, GANPAT, Bethel, that case, and there's Underweiser, if I'm pronouncing it correctly. In those cases, every single instance there was a first filed U.S. action with a U.S. party. That is not the case here. That distinguishes all of the ASI cases that they cite in support of their position. All we're asking for is that the normal course, as per Judge Stewart in Halliburton, is for the courts to look first. And after the courts look, then with everything in the record, including jurisdictional discovery, if appropriate, then your honors can make the decision as to whether or not there was some error in the district court's determination of jurisdiction. I have a million notes, and I've gotten about one of them, so if there are questions or any pinpointed points of the argument that you'd like me to address, I'd be happy to do so. All right. Thank you, Mr. Acker. Okay. Thank you. Acker for a rebuttal. Thank you, your honors. Just a few points in response. First of all, I want to continue the I just want to clarify their position on personal jurisdiction and what this court can and should do and what's required in a preliminary injunction. Our point is simply that when this court is reviewing a preliminary injunction, absolutely a district court has to find personal jurisdiction before issuing a preliminary injunction. When this court's reviewing it, this court doesn't have to decide for itself if there's another basis for saying the preliminary injunction is lawless. Judge Oldham has a... There's a likelihood of success on the merits... Exactly. Especially right in the international anti-suit injunction context, where that's the only relevant question, is whether there's merits. The court can reach that and simply say there's no legal basis for it, and so we don't have to resolve whether the court also lacked personal jurisdiction. As Judge Oldham said in his concurrence in the Abbott case just last year, to reverse an injunction, this is the difference between affirming an injunction, because that's an exercise of judicial power, to reverse an injunction, there is no order of operations, because reversing a preliminary injunction prevents the exercise of judicial power over the defendant, regardless of whether we base that reversal on the plaintiff's inability to establish jurisdiction or to prove the elements of its claim, etc. So that's our only point about whether or not this court must reach the personal jurisdiction question. But you're not opposed to us reaching it. No. We think it's as simple a question as all the other questions in this case. There's absolutely no personal jurisdiction. Their only argument, you just heard it, was that the Louisiana statute creates personal jurisdiction, which is a complete non-sequitur. Nobody's arguing about what the Louisiana statute says. The question is whether the due process clause of the United States Constitution allows a state to assert personal jurisdiction over a non-resident foreign defendant that has done absolutely nothing to purposefully avail itself of the local forum. There's no showing of that here. That's the relevant inquiry, and they point to zero that shows that Chubb-Bermuda, a Bermuda insurance company that does everything in Bermuda, requires insurance, potential insurance, to come to Bermuda through a Bermuda broker to get a policy, has done anything in Louisiana. That's the relevant inquiry, and there's no such showing here. Their argument on the motion to remand, that that's a pending unaddressed issue, Judge Smith, I think you had it exactly right, those present purely legal issues this court can and should address. Their argument, as he says, he's got a number of arguments in the briefs. We address them in our reply. What he argues this morning is that there's been effectively a waiver of the clause, so the convention doesn't apply because we didn't invoke the arbitration agreement until sometime after they filed a suit against other people and issued a proof of loss. The key is, or other entities, the key is they never filed a claim, never asserted a claim. All they gave was a proof of loss, which they have to give. We have no obligation to initiate arbitration or to invoke the arbitration clause or to do anything, just as Judge Haynes was saying, until they demand money from us. Indeed, if we tried to do anything, initiate an arbitration, it wouldn't even have been ripe because there's no argument. They haven't yet shown that their loss was going to reach our insurance. Remember, we're like at the top of the So we couldn't even bring a claim. We couldn't assert, we couldn't invoke arbitration until there was a showing that they'd suffered a loss that would implicate our policy. So it wasn't even possible. It became possible as soon as they asserted a claim in the guise of a lawsuit against us, and as Judge Haynes pointed out, we immediately sought to enforce the provision. Now, they complained that we ran to a London jurisdiction, which is completely baffling to me because it was agreement, right? Again, in writing, they said, if we have a dispute, here's how we're going to handle it. This is Landry speaking. This is what we're going to do. We're going to go to London. That's what they agreed to in their, you know, freely entered contract. We'll go to London. That's where we'll arbitrate. And as this Court said, in Haynes and other cases, when you agree to an arbitral forum, you're also consenting to the courts of that jurisdiction enforcing the agreement. So that's Landry speaking in this agreement. They said, the place to do this, the place to handle, to enforce an arbitration agreement, not just resolve a coverage dispute, but to enforce the arbitration agreement, is London. We didn't run to London. We just did what Landry's and we had already agreed to do. There's no problem with that whatsoever. The last point I'll address is my colleague's point that, well, this Court's ASI precedents don't involve a case that was first filed in the United States. That's not a relevant inquiry, like the first day. It's not a race to the courthouse. That's not what it's about. It's about respect for international comedy and the judicial proceedings of another jurisdiction that can only be overcome if that other proceeding is vexatious and harassing. That's the relevant inquiry. And there's just no showing here whatsoever, of course, that the English proceeding is vexatious and harassing, particularly when we addressed all of this in the brief, but particularly when, again, it was by their own agreement to proceed in London. Remind me, in the eight months in the High Court, participation by them, what was the nature of their participation? Were they raising that they shouldn't be there on these issues here or just proceeding along? So, both. They didn't object at the very beginning to the ASI saying there's jurisdiction here. To the contrary, they agreed that the London court would be the place to resolve by stipulating. They actually agreed in the lawsuit here to hold on, to stipulate, to stay in this lawsuit while the London proceedings were resolved. They then, at some point, I think it was in July, I may have that date wrong, they submitted evidence in an argument and they objected to jurisdiction. They made their jurisdiction arguments there, but that was what the proceedings required. There's an argument, a threshold argument that court is dealing with, just like any court here might deal with, that says you're not the right forum for this. And what their evidence says, if you look at it, is when you drill down to what's going on, they say this is not the right jurisdiction, even though we agreed that this was the right jurisdiction. What's the reason for saying that the London court is not the right jurisdiction? The Louisiana Anti-Arbitration Act, which this court has said doesn't apply. In the scheduled January 26th proceeding over there, is subsumed within whatever is going to happen, that court determining the efficacy of them being over there, or is that part of the mix of what's to happen in January 2026? That's right. That's actually the core of what they'll be looking at. Now, technically, formally, the issue is whether the anti-suit injunction is an appropriate one, that the court is deciding for itself whether it should maintain the ... But the reason for doing that would be, if the court agrees, that the parties agree to that as the appropriate forum, and it's just a normal exercise of judicial power that courts here would exercise too. If this were the correct forum, the court would just say, you can't litigate somewhere else, and therefore obstruct the exercise of the jurisdiction you already agreed to before this court. The papers there, is the citation to the Louisiana revised statute part of their bases over there of why they shouldn't be there? It's their only argument. When you look at it, they say, we have various objections to jurisdiction. This is a Louisiana case, et cetera, et cetera. Then they say, well, Chubb-Bermuda, their answer is, we agreed to this London proceeding, but that agreement, they say, doesn't count because the Louisiana anti-arbitration statute makes it unenforceable, and that's just backwards. They don't tell the London court about all of this court's decisions saying that that statute doesn't apply to a case like this one. Okay. I just wanted to be clear. Yeah. Thank you, Your Honors. Thank you, Mr. Packer. Your case and all of today's cases are under submission.